UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYLVIA ZEPEDA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-cv-3121 |
| | § | |
| FEDERAL HOME LOAN MORTGAGE ASSOCIATION | § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are opposing Motions for Summary Judgment on Plaintiff's quiet title claim and Defendant's counterclaims for contractual and equitable subrogation. After considering the Motions, the responses thereto, and the applicable law, the Court determines that Plaintiff should prevail on all claims.

1. **INTRODUCTION**

This case is about a home equity lien. Plaintiff Sylvia Zepeda ("Plaintiff" or "Ms. Zepeda") argues that the lien she obtained in 2011 violated the Texas Constitution and therefore constitutes an infringement on her property rights. Defendant Federal Home Loan Mortgage Association ("Defendant" or "FHLMC") does not dispute the constitutional infirmity of the lien but argues that it, as a lender, is contractually and equitably subrogated to Plaintiff's prior lender. The parties filed cross motions for summary judgment.

This Court previously granted Defendant's Motion for Summary Judgment on Plaintiff's claims for breach of contract, declaratory judgment, and permanent injunction. Therefore, the only remaining claims are: (1) Plaintiff's quiet title claim and (2) Defendant's counterclaim for contractual and equitable subrogation.

The Court thanks the parties for their supplemental briefing on this difficult question of law.

## 2. **FACTUAL BACKGROUND**

Around 2008, Ms. Zepeda purchased and became owner of the property in dispute (the "Property"). Thereafter, she granted a valid lien against the Property in the amount of $65,000 in favor of non-party CIT Group/Consumer Finance, Inc. ("Prior Existing Lien"). The deed of trust memorializing that transaction was recorded in the deed records of Fort Bend County, Texas. In 2011, Ms. Zepeda refinanced by obtaining a home equity loan from Embrace Home Loans, Inc. ("Embrace") (another non-party), and entered into a Home Equity Security Agreement ("Security Instrument") with that lender. At the time she executed the Security Instrument, Ms. Zepeda requested a payoff of the Prior Existing Lien. Accordingly, Embrace paid off Ms. Zepeda's $53,570.63 debt on the Prior Existing Lien. Satisfaction of the Prior Existing Lien was memorialized by the recording of a release of lien in the Fort Bend County deed records. Neither party disputes that FHLMC (not Embrace) is the current owner of the loan in question.

The Security Instrument states in relevant parts:

> It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply [with Section 50(a)(6)], Borrower will advise Lender of the noncompliance . . . . [O]nly after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender.
>
> All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected from Borrower, any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of

> Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.
>
> Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof . . .

(Doc. No. 21, Exhibit #2, ¶¶ 19, 24.)

In June 2015, Plaintiff's counsel sent Defendant a Notice to Cure, which informed Defendant that the lien violated Tex. Const. art. XVI §50(a)(6)(Q)(ix) because the lender's signature did not appear on the Acknowledgement of Fair Market Value.

In response to Plaintiff's Notice to Cure, the lender (Embrace) sent Plaintiff a letter stating the following:

> The . . . implied violation suggests that a required disclosure through which the lender and borrower acknowledge the fair market value for the property, on which the loan is based [sic]. However, our loan file contains the copy of two documents which refer to this requirement [sic].
>
> The first is the [Acknowledgement of Fair Market Value] itself, which is executed by Sylvia R. Zepeda on July 25, 2011, the date of the closing, and the second is a summary document that refers to the various documents received at closing, and this summary document is again signed by Ms. Zepeda. A copy of these documents is included in this correspondence.

(Doc. No. 21-5.)

The Acknowledgement of Fair Market Value contains Plaintiff's signature but no lender's signature. (*Id.* at 4.) The Receipt of Document Copies acknowledges only that Plaintiff received a copy of the Acknowledgement of Fair Market Value but does not speak to its completeness. (*Id.* at 3.)

Plaintiff is current on her loan payments at this time.

3. ANALYSIS

   a. **Quiet title action**

Plaintiff's claim to quiet title runs as follows:

> Plaintiff is the undisputed owner of the Property by virtue of Plaintiff's recorded deed. Defendant has clouded Plaintiff's title by claiming that Defendant has a lien for security purposes on Plaintiff's Property and that Defendant has the power to foreclose on said Property. The Note and Deed of Trust upon which the Defendant asserts an interest, although facially valid, is in fact *invalid* and of no force or effect because Defendant's uncured constitutional violations have rendered Defendant's underlying lien void *ab initio.* Thus, Defendant's claim interferes with Plaintiff's title.

(Doc. No. 1, Exhibit #8 at 6-7.)

In the recent case of *Vestal v. Federal National Mortgage Association*, another judge in this district considered an identical claim and wrote:

> Plaintiff's claim to superior title is not based on the strength of Plaintiff's title to the Property, but on the weakness of Defendants' title to the Property resulting from the alleged violations of the Texas Constitution. Therefore, Plaintiff's quiet title claim fails as a matter of law.

No. CV H-16-3628, 2017 WL 4217165, at *1 (S.D. Tex. Sept. 20, 2017).

The opinion cited *Ventura v. Wells Fargo Bank, N.A.*, in which another district court had opportunity to examine the same pleading and held that it failed for three reasons:

1. "because plaintiffs have not shown that defendant's claim of a valid lien and the power to foreclose is invalid or unenforceable,"

2. "[because] plaintiffs have failed to sufficiently allege facts showing that the home equity lien is void," and

3. "[because] plaintiffs' allegations are not based on the strength of their own title, but instead are based on the alleged weakness of defendant's title."

4

No. 4:17-CV-075-A, 2017 WL 1194370, at *1 (N.D. Tex. Mar. 30, 2017). Each reason will be examined in turn below; ultimately, none applies to this case.

1. **"because plaintiffs have not shown that defendant's claim of a valid lien and the power to foreclose is invalid or unenforceable"**

The Texas Constitution states: "No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section . . . ." Tex. Const. art. XVI, § 50(c). Tex. Const. art. XVI §50(a)(6)(Q)(ix) requires that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." In *Wood v. HSBC Bank USA, N.A.*, the Texas Supreme Court took extra care to explain that "liens securing constitutionally noncompliant home-equity loans are **invalid** until cured." 505 S.W.3d 542, 544 (Tex. 2016) (emphasis added).

In this case, Plaintiff's lien was constitutionally noncompliant because the Acknowledgment of Fair Market Value did not contain the lender's signature and the lender failed to cure that defect. Therefore, the *Ventura* conclusion that "plaintiffs have not shown that defendant's claim of a valid lien and the power to foreclose is **invalid**" plainly does not apply here.

2. **"[because] plaintiffs have failed to sufficiently allege facts showing that the home equity lien is void"**

The *Wood* court addressed whether a constitutionally noncompliant lien is "void" as that term is understood under common law. Under the Texas Constitution, "No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section." Tex. Const. art. XVI, § 50(c). The Court explained, "Section 50(c) starts with the premise that a lien securing a noncompliant loan is never valid. Implementing a section 50(a)(6)(Q)(x) cure provision brings the loan into constitutional compliance, thereby validating

5

the accompanying lien. These cure provisions are the sole mechanism to bring a loan into constitutional compliance." *Id*. The Court explained that its holding did not "create a new common-law category of liens that are 'void until cured'" but rather merely interpreted "the plain language of the Constitution, which defies common-law categorization." *Id.* As the Court put it, "Constitutional mandates need not be shoehorned into common-law concepts when those concepts conflict with the Constitution's plain text." *Id.*

In this case, Plaintiff's lien was constitutionally noncompliant and was not cured by a section 50(a)(6)(Q)(x) provision. Therefore, it was invalid and the *Ventura* conclusion that "plaintiffs have failed to sufficiently allege facts showing that the home equity lien is **void**" does not apply.

### 3. "[because] plaintiffs' allegations are not based on the strength of their own title, but instead are based on the alleged weakness of defendant's title"

Texas law is well settled that "[i]n a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. 2009). The Texas standard for a plaintiff to demonstrate a "superior equity and right to relief" is as follows: "the plaintiff must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Id.* at 531. Here, Plaintiff has demonstrated without dispute that she owns the property and is current on her mortgage payments. *See* Doc. No. 1, Exhibit #8 ("Plaintiff is the undisputed owner of the Property by virtue of Plaintiff's recorded deed"); Doc. No. 17 (Defendant's Motion for Summary Judgment) at 1 ("Zepeda is current on her home equity loan and does not dispute that FHLMC is not attempting to foreclose on her home.").

Ms. Zepeda satisfies the *Hahn* standard by virtue of her undisputed ownership of the Property and uncontroverted status of "current" on her home equity loan payments. Accordingly, and because Defendant claims to possess a valid lien on such property when in fact that lien is invalid, Plaintiff's Motion for Summary Judgment on the quiet title claim is **GRANTED.**

### b. Whether FHLMC is equitably and contractually subrogated to the lien

Defendant asserts subrogation (contractual and equitable) as both a defense and a counterclaim.

"Texas law provides for both contractual and equitable subrogation. Equitable subrogation is governed by principles of equity and occurs whenever a subsequent lender pays off an existing debt. Contractual subrogation arises when a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an *agreement* that such person shall stand in the place of the original holder of the indebtedness." *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002) (internal citation omitted) (emphasis in original).

### 4. Contractual subrogation

Under the Security Instrument, FHLMC became subrogated to all prior liens against the Property. (Doc. No. 21, Exhibit #2, ¶ 24) ("Lender shall be subrogated to any and all rights, superior title, liens, and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof . . ."). That clause would appear to grant Defendant the right to recover Plaintiff's $53,570.63 indebtedness under the Prior Existing Lien. But there is a qualification. The subrogation provision is expressly conditional on the Security Instrument's compliance with Tex. Const. art. XVI, § 50(a)(6)(C), which states that "The homestead . . . shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that . . . is without recourse for personal liability against

each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud."[1] The Security Instrument explains: "This means that, absent actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner." (Doc. No. 21, Exhibit #2, ¶ 24.) Therefore, there can be no subrogation with respect to Ms. Zepeda's personal liability. Additionally, due to the missing signature on the Acknowledgement of Fair Market Value, Defendant has no power to enforce rights under the Security Instrument against the Property.

"A valid deed of trust executed by both the borrower and lender establishes contractual subrogation." *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002). Here, there was no "**valid deed of trust**" because, as the Texas Supreme Court clarified in *Wood v. HSBC Bank USA, N.A.*, "liens securing constitutionally noncompliant home-equity loans are **invalid** until cured." 505 S.W.3d 542, 544 (Tex. 2016) (emphasis added). Therefore, Defendant cannot vindicate its claim to the $53,570.63 debt through contractual subrogation.

   4.  **Equitable subrogation**

"Texas courts have a long history of applying equitable subrogation to preserve lien rights on homestead property dating back as early as 1890." *In re Hutchings*, No. 17-51137-CAG, 2017 WL 4174394, at *2 (Bankr. W.D. Tex. Sept. 19, 2017). "The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor." *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007).

The question is whether Defendant is entitled to equitable subrogation under these facts. Plaintiff advances three arguments in opposition to equitable subrogation: (1) that it is time-

---

[1] There is no claim or evidence of fraud here.

barred, (2) that subrogation is not permitted under the Constitution, and (3) that Defendant's actions do not favor equitable relief.

### i. Whether statute of limitations bars equitable subrogation

Plaintiff argues that Defendant's claim for equitable subrogation is barred either by the four-year default statute of limitations or the statute of limitations that governs suits for the recovery of real property under a real property lien, which is also four years.[2] Plaintiff asserts that "a cause of action accrues at the time *facts* come into existence that authorize a claimant to seek a judicial remedy" and that because Defendant's **payment** was made to the prior lienholder in 2011, the equitable subrogation claim is time-barred. (Doc. No. 31 at 8, citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)). Plaintiff cites *Brown v. Zimmerman*, 160 S.W.3d 695, 700 (Tex. App. 2005), for the proposition that a court should apply a four-year statute of limitations to an equitable subrogation claim on a real property lien. The *Zimmerman* court explained, "There is no specific statute of limitations for subrogation actions. Instead, these actions generally are subject to the same statute which would apply had the action been brought by the subrogee." *Id.* at 700. In that case, an ex-husband's holding company sued an ex-wife based on a first note secured by a deed of trust awarded to the ex-wife in divorce. The court considered it an action on a "debt," governed by the Tex. Civ. Prac. & Rem. Code §16.004(a)(3) four-year statute of limitations period, and held that it was timely filed because the action was based on the claim the prior note and lienholder would have had, which was filed within four years of **payment to the other lender to secure and refinance the first note**. In other words, the accrual date in *Zimmerman* appears to have been the date of refinancing.

---

[2] *See* Tex. Civ. Prac. & Rem. Code §16.051 ("Every action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues"); Tex. Civ. Prac. & Rem. Code §16.035(a) ("A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues").

9

The *Zimmerman* holding is out of step with the majority rule, which is that a claim for equitable subrogation accrues on the maturity date of the underlying debt secured by the prior lien, which would be in July 2022 in this case.[3] "Texas courts have long held that a cause of action for equitable subrogation does not accrue until the maturity date of a secured note." *Gillespie v. Ocwen Loan Servicing, LLC*, No. 4:14-CV-00279, 2015 WL 12582796, at *4 (S.D. Tex. Oct. 28, 2015).[4] *Zimmerman* offers no reason to depart from this precedent. Therefore, Defendant's equitable subrogation claim is timely.

### ii. Whether subrogation is permitted under the Texas Constitution

Plaintiff makes both a legal and a "policy argument" that awarding equitable subrogation would "needlessly absolve Defendant of its failure to comply with the Texas Constitution," thereby "goug[ing] the constitution and render[ing] it, in many cases at least, meaningless and inoperative." (Doc. No. 31 at 7.) As a matter of law, Plaintiff asserts in the spirit of *expressio unius est exclusio alterius* that the constitutionally specified remedy of invalidating a noncompliant lien should be exclusive.[5] Plaintiff also avers, as a matter of policy, that an equitable subrogation "safety net" would establish "little incentive to strictly comply with the constitution's requirements." (*Id.*) Plaintiff acknowledges that the crux of this case is "one missing signature on one document" but highlights that the Constitution does not prioritize

---

[3] The Southern District has held: "This Court recognizes that in *Zimmerman*, the court appeared to assume that a cause of action for equitable subrogation accrued on the purchase date, not the maturity date, of the note . . . But unlike the older authorities, *Zimmerman* did not squarely address the question of when the cause of action accrues, and therefore it does not control. *Gillespie v. Ocwen Loan Servicing, LLC*, No. 4:14-CV-00279, 2015 WL 12582796, at *4 (S.D. Tex. Oct. 28, 2015) (internal citations omitted).

[4] *See Hays v. Spangenberg*, 94 S.W.2d 899, 902 (Tex. Civ. App. 1936) ("Nor do we think limitation began to run against Spangenberg's rights until the due date of the note executed to him."); *Ward-Harrison Co. v. Kone*, 1 S.W.2d 857 (Tex. Comm'n App. 1928) ("The question is, not whether the right to subrogation is barred, for such right arises, if at all, as a matter of law, but the question should be, Is the debt made the basis of such right barred?")

[5] *Expressio unius est exclusio alterius*, *Black's Law Dictionary* (10th ed. 2014) ("A canon of construction holding that to express or include one thing implies the exclusion of the other . . . .").

among violations and urges that it is not for the Court to decide which are more meaningful than others. (*Id.*)

The *expressio unius* inference is inapt; equitable relief is by definition unspecified in the governing law. *See Equity*, *Black's Law Dictionary* (10th ed. 2014) (emphasis added) ("The recourse to principles of justice to **correct or supplement the law** as applied to particular circumstances; specif., the judicial prevention of hardship that **would otherwise ensue from the literal interpretation of a legal instrument** as applied to an extreme case or from the literal exclusion of a case that seems to fall within what the drafters of the instrument probably intended"). Additionally, it would mark a significant departure from precedent to hold that equitable subrogation is at odds with the Texas Constitution. As a recent Western District opinion noted, "Texas courts have a long history of applying equitable subrogation to preserve lien rights on homestead property dating back as early as 1890." *In re Hutchings*, No. 17-51137-CAG, 2017 WL 4174394, at *2 (Bankr. W.D. Tex. Sept. 19, 2017). *See also LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007) ("[The Constitution] contains no language that would indicate displacement of equitable common law remedies was intended, and we decline to engraft such a prohibition onto the constitutional language.")

As a matter of law, therefore, the Constitution's failure to mention equitable relief certainly does not preclude it.

On the policy issue, Plaintiff raises a compelling problem; lenders should not assume they can escape constitutional compliance through subrogation. But the threat of this problem is limited. Equitable subrogation is available only in a sub-category of constitutionally deficient home equity liens – namely, those that pay off a prior existing lien. Lenders making a first-time home equity loan would not be tempted by the same "safety net" because they would have no

11

prior lender to subrogate. Additionally, litigation expense should incentivize lenders to execute compliant loans notwithstanding the possible availability of equitable subrogation.

Ultimately, precedent makes clear that equitable subrogation is available under the Texas Constitution. The question is whether it should obtain in this case.

### iii. Whether Defendant's actions favor equitable relief

Texas law is deeply concerned with protecting the homestead from harmful lending practices. In fact, Texas was the last state in the nation to permit home equity loans. *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 618 (Tex. 2007). The constitutional amendments on the subject delineate in painfully exacting detail the requirements of a valid home equity lien. The "fundamental purpose" of these provisions is, according to the Texas Supreme Court, "to protect the homestead." *Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 17 (Tex. 2014).

The constitutional amendments also establish a procedure for rectifying errors in noncompliant liens. Specifically, Tex. Const. art. XVI §§50(a)(6)(Q)(x)(a)-(f) establish a 60-day window within which a lender can cure any and all missing signature(s) on an Acknowledgement of Fair Market Value by simply "obtaining the appropriate signatures." Tex. Const. art. XVI §§50(a)(6)(Q)(x)(a)-(f).

In this case, a constitutional requirement was violated; specifically, "the owner of the homestead and the lender [must] sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made" and the lender never signed that document. Tex. Const. art. XVI §§50(a)(6)(Q)(ix).

After discovering the violation, Ms. Zepeda sent the lender (Embrace) a notice and request to cure the missing signature, in perfect accordance with the procedures set forth in Tex.

12

Const. art. XVI §50(a)(6)(Q)(x)(a)-(f). Rather than simply "obtaining the missing signatures," the lender sent Plaintiff a nonsense response that entirely failed to address or cure Ms. Zepeda's concern.

### a. Standard

"[A] party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). "The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation." *Bank of Am. v. Babu*, 340 S.W.3d 917, 926 (Tex. App. 2011). "[E]ach case turns on its own facts when the issue is one of purely equitable subrogation. *Murray v. Cadle Co.*, 257 S.W.3d 291, 300 (Tex. App. 2008). "The burden is on the party claiming equitable subrogation to establish he is entitled to it." *Id.* One of the factors the court may consider is "the negligence of the party claiming subrogation." *Id*

### b. Analysis

Defendant insists that "maintaining the status quo" is the correct result of this case, the status quo being that "Zepeda continues paying on her home-equity note and FHLMC continues to retain a lien against the property . . . [t]he only change being that the lien FHLMC has the right to enforce upon default is an equitable lien instead of the Security Instrument."[6] (Doc. No. 30 at 4.)

Defendant first asserts that Plaintiff cannot offer any evidence to indicate that maintaining the status quo is the incorrect result because "Zepeda did not move for summary judgment on FHLMC's counterclaim in her cross-motion." *Id*. Although Plaintiff's Brief in

---

[6] The amount of the proposed equitable lien would be $53,570.63 (the amount of the Prior Existing Lien which was discharged) plus interest, calculated from the time of payoff of the Prior Existing Lien.

Support of Motion for Summary Judgment indicates that it pertains to her claims for declaratory judgment and quiet title, and contains substantive argument only with respect to those and the breach of contract claim, the Brief also states that she "prays for any further relief that she may be awarded in law or in equity." (Doc. No. 21 at 11.) Additionally, Plaintiff's Motion for Summary Judgment avers that the "Court should grant summary judgment to Plaintiff on all of Plaintiff's claims **and that Defendants should take nothing on any claims against Plaintiff**." (Doc. No. 20) (emphasis added). The Court finds that Plaintiff sufficiently moved for summary judgment with respect to Defendant's equitable subrogation claim even though she declined to provide substantive argument on the matter in the original round of briefing. To require greater particularity would be an unnecessary exaltation of form. Moreover, even though Plaintiff's earlier motions do not contain argument regarding Defendant's counterclaim, the Court has power to find for Plaintiff under Fed. R. Civ. P. 56(f).

Defendant next argues that, because Ms. Zepeda's loan is non-recourse to her personal liability, "if the Court rules in favor of Zepeda on the quiet title claim, but does not apply equitable subrogation as either a counterclaim or an affirmative defense, FHLMC would be left with no remedy to enforce a future default on the loan." (Doc. No. 30 at 4.) As Defendant explains, "This is the exact scenario that equitable subrogation is designed to prevent." Defendant insists that "Zepeda is requesting a windfall based upon the failure of the original lender to sign one document the content of which Zepeda appears to concede is correct (Zepeda does not dispute that the fair market value was incorrect or assert any claim related to the content of the information in the disclosure)." (*Id.* at 4-5.)

Plaintiff counters that Defendant is not entitled to equitable subrogation because the "lender has failed to prove that it was a 'good player' that deserves the equitable right to

repayment." (Doc. No. 31 at 5-6.) Plaintiff explains, "Defendant merely had to cure this deficiency in order to avoid this litigation, but it either neglected or deliberately ignored its many opportunities to cure. Defendant *chose not to cure* this constitutional deficiency, yet now seeks $53,570.63 for "equitable" relief. Is it equitable to reward the party that **caused** the constitutional violation and subsequent litigation?" (*Id.*) (emphasis in original).

This is a delicate balance of equities. Ultimately, though, the "status quo" cannot be the correct result when there has been a constitutional violation *and* either negligent or reckless failure to cure. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("[W]here there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.") Ms. Zepeda's lender was afforded ample notice and opportunity to cure the defect in the lien in the straightforward manner contemplated by the drafters of the Texas Constitution, and yet failed to do so. The Court has received no indication that this error was justified by any factor other than oversight, and the law's protection of the homestead is simply too great for equity to favor the lender over the borrower under such circumstances.

For the foregoing reasons, Defendant is not entitled to equitable subrogation. Therefore, Plaintiff's claim to quiet title prevails as a matter of law.

4. **CONCLUSION**

The Court **GRANTS** Plaintiff's Motion for Summary Judgment on the claim to quiet title and **DENIES** Defendant's counterclaims for contractual and equitable subrogation.

The unusual effect of today's decision is a reflection of the unique posture of this case; only rarely has this Court encountered a suit challenging the constitutionality of a home equity lien from a borrower-plaintiff whose payments were current. It is also a consequence of the peculiar nature of constitutionally noncompliant home equity liens as not "voidable" nor "void"

15

as those terms are traditionally understood (the case law calls them "invalid"). *See*, *e.g.*, *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542. Indeed, as the Texas Supreme Court has recognized, "home-equity liens securing constitutionally noncompliant loans do not neatly fit into a common-law category." *Id*. at 550.

Two practical consequences of today's ruling are clear. First, Ms. Zepeda is not entitled to forfeiture of all principal and interest paid pursuant to her note. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 484 (Tex. 2016), reh'g denied (Sept. 23, 2016) ("The terms and conditions required to be included in a foreclosure-eligible home-equity loan are not substantive constitutional rights, nor does a constitutional forfeiture remedy exist to enforce them."). Second, Defendant is correct that Plaintiff would ultimately be protected from foreclosure should she fall into default. *Id.* ("The constitution guarantees freedom from forced sale of a homestead to satisfy the debt on a home-equity loan that does not include the required terms and provisions.")

As a matter of law, this Court now declares Defendant's lien on the Property invalid and therefore **GRANTS** Plaintiff's quiet title claim.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 8th day of February, 2018.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE