**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SYLVIA ZEPEDA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-cv-3121 |
| | § | |
| FEDERAL HOME LOAN MORTGAGE | § | |
| ASSOCIATION | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's Motion to Alter or Amend Judgment (Doc. No. 38).

### I. INTRODUCTION

On February 20, 2018, the Court entered Final Judgment in this matter (Doc. No. 36). As explained in the Court's February 8, 2018 Memorandum and Order (Doc. No. 35), the Court granted summary judgment to Plaintiff Sylvia Zepeda ("Ms. Zepeda" or "Plaintiff") on her claim for quiet title and against Defendant Federal Home Loan Mortgage Association ("Defendant" or "FHLMC") on its counterclaims for equitable and contractual subrogation. Defendant now moves to alter and/or amend the Final Judgment pursuant to Federal Rule of Procedure 59(e) on the ground that the Court's Memorandum and Order was based upon an error of law that leads to manifest injustice. For the reasons discussed below, the Court denies Defendant's Motion.

### II. STANDARD OF REVIEW

"[Motions] to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v.*

*United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (internal citation omitted). "A manifest error is an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017), cert. denied, 138 S. Ct. 1037 (2018) (citations omitted). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

## III.    ANALYSIS

Defendant argues that the Court erred in its contractual subrogation analysis as well as its equitable subrogation analysis. Each will be taken in turn.

### a.    Contractual Subrogation

Defendant's motion cites authority from 1996 suggesting that "contractual subrogation clauses continue to operate in the context of a refinance even if the new security instrument and lien are originated in violation of the Texas Constitution." (Doc. No. 38 at 4, citing *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 662 (Tex. 1996)). In *Benchmark*, the lender became contractually subrogated to a prior-existing federal tax lien notwithstanding the fact that the lender's deed of trust was void because it did not secure one of the three types of liens that could be secured against homestead property under the existing law. FHLMC insists that the case establishes that "[e]ven if the Security Instrument is not 'foreclosure eligible,' the remaining clauses in the contract – including the subrogation clause – remain intact." (*Id.* at 5.) The problem for Defendant is that the subrogation clause in Plaintiff's Security Instrument expressly precludes recourse to Ms. Zepeda's personal liability. (Doc. No. 21, Exhibit #2, ¶ 24.) ("This means that, absent actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of

an owner.") Because the Property is not foreclosure-eligible and Ms. Zepeda's personal liability

was, by contract, inaccessible, Defendant has no available recourse.

FHLMC also cites *Priester v. Long Beach Mortg. Co.*, No. 4:16-cv-00449, 2018 U.S.

Dist. LEXIS 31954, at *18 (E.D. Tex. Feb. 28, 2018) which again holds that a lender was

contractually subrogated to a prior-existing lien despite uncured constitutional violations making

the security instrument void. But again in *Priester*, there is no discussion of a no-personal-

liability provision. Therefore, it does not alter the Court's analysis.

Defendant's Motion raises, for the first time, a new legal theory based on the Security

Instrument's severability clause. (Doc. No. 38 at 6.) "[M]otions [to Amend Judgment] cannot be

used to raise arguments which could, and should, have been made before the judgment issued."

*Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (internal citation omitted).

Accordingly, the Court does not credit that argument at this time.

Defendant has failed to illuminate a manifest error of law or fact or any newly discovered

evidence. Therefore, the Court's holding with respect to contractual subrogation shall not be

amended.

## b. <u>Equitable Subrogation</u>

Defendant argues that the only factor this Court should consider in its equitable

subrogation analysis is the lender's payment of pre-existing liens, not any alleged negligence or

recklessness in originating an unconstitutional lien or curing that defect. For that proposition,

Defendant cites *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007). This Court

cited *LaSalle* in its Memorandum and Order for the proposition that the "Texas Supreme Court

has honored equitable subrogation claims against homestead property when a refinance, even

though unconstitutional, was used to pay off valid liens." *Id.* Defendant's Motion emphasizes

that "the only factor the Supreme Court [in *LaSalle*] considered in awarding common-law equitable subrogation was the lender's "payment of the pre-existing, constitutionally valid liens, which allowed the bank to step into the shoes of the prior lienholders" and that "[a]lleged negligence or recklessness in originating an unconstitutional lien or curing that defect was not a factor." (Doc. No. 38 at 8.) Defendant's reading of the case is correct but its conclusion therefrom does not necessarily follow. The Memorandum and Order cited *Murray v. Cadle Co.*, 257 S.W.3d 291, 300 (Tex. App. 2008) for its clear holding that "one of the factors the court may consider is 'the negligence of the party claiming subrogation.'" (Doc. No. 35 at 13.) FHLMC's motion gives the Court no reason to doubt the authority of *Murray*. Additionally, *Murray* makes questionable Defendant's assertion that "[u]nder Texas law, the common-law remedy of equitable subrogation is entirely independent of compliance with the Texas Constitution in origination of the loan or in complying with the cure provisions," a statement of law for which the Motion cites no authority. (Doc. No. 38 at 9.)

As an argument that sounds more in policy than law, Defendant points out the circularity that "FHLMC is only entitled to equitable subrogation if it complied with the constitutional cure provision. But FHLMC would not need to assert its claims for equitable and contractual subrogation had the defect in the loan been cured in compliance with the constitution." (*Id.* at 9.) But constitutional noncompliance is not simply a black-or-white status in which a lender unfortunately finds itself. A lender receives notice of noncompliance and has an opportunity to cure, and the lender's response to those provocations could range from good-faith opposition to genuine oversight to reckless indifference. The lender's response in this case, as explained in the Memorandum and Order, fell into the last category. (Doc. No. 35 at 13) ("Rather than simply obtaining the missing signatures, the lender sent Plaintiff a nonsense response that entirely failed

4

to address or cure Ms. Zepeda's concern.") (internal quotation marks omitted). The competing policy argument to Defendant's is that cure provisions would be rendered entirely meaningless if lenders could always avoid them through equitable subrogation. In any case, Defendant's concern raises no new factual or legal issue.

The Court's equitable subrogation holding remains in place.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Alter or Amend Judgment is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 25th day of April, 2018.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE